**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals With Disabilities LLC and David Ritzenthaler,<br><br>Plaintiffs,<br><br>v.<br><br>WSA Properties LLC,<br><br>Defendant. | No. CV-16-02375-PHX-DGC<br><br>**ORDER** |

Plaintiffs Advocates for Individuals with Disabilities ("AID") and David Ritzenthaler filed a complaint against Defendant WSA Properties LLC in Maricopa County Superior Court. Doc. 1. The complaint alleges violations of both federal and state disabilities law, and Plaintiffs seek declaratory, injunctive, and monetary relief. *Id.* at 17-18. On July 15, 2016, Defendant removed the case to this Court, asserting that the Court has subject matter jurisdiction over Plaintiffs' federal claims. Doc. 1. On August 15, 2016, the Court issued an order requiring Plaintiffs to show cause why this case should not be dismissed for lack of standing ("Order"). Doc. 13. After receiving an extension of time, Plaintiffs responded. Doc. 24. For the reasons that follow, the Court finds that Plaintiffs lack standing to pursue their claims in this Court. Because the standing analysis for state court differs from federal analysis, the Court will remand this case to state court.

1

## I.     Background.

Attorneys Peter Strojnik and Fabian Zazueta have filed numerous claims against local businesses alleging violations of the Americans with Disabilities Act ("ADA") and similar state statutes.  Since March 2016, 162 of their cases have been filed in or removed to this Court.[1]  These cases all appear to assert identical allegations – that the defendant business (the nature of which usually is not identified in the complaint) has violated the ADA by having inadequate signage or parking spaces for disabled persons.

Concerned about these very general allegations, the Court entered an order on August 15, 2016, requiring Plaintiffs to show why this case should not be dismissed for lack of standing.  The Court noted:

> Plaintiff [AID] makes no allegations in the complaint regarding its status, nature, or interest in this case.  Plaintiff David Ritzenthaler alleges that he is legally disabled, that he has a state-issued handicapped license plate, and that, on or about March 15, 2016, he "became aware" that there were insufficient handicapped parking spaces and signage at Defendant's place of business.  Plaintiff does not allege that he personally visited Defendant's business, but alleges that he will avoid visiting the business in the future unless it comes into compliance with the ADA.

Doc. 13 (citations omitted).  Because these general allegations failed to show that Plaintiffs have "concrete and particularized" injuries that affect them "in a personal and individual way," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992), the Court ordered Plaintiffs to file a memorandum showing standing by August 29, 2016. Instead, Plaintiffs filed a notice of settlement on August 26, 2016, and asked the Court to vacate the Order.  Doc. 15.  The Court declined, noting that this case has not been dismissed and that Plaintiffs have many other cases before the undersigned judge that present the same standing concerns.  Doc. 18.  The Court directed Plaintiffs to respond as ordered on August 29, 2016.

---

[1] Fifty-eight of these complaints have been brought on behalf of AID.  The remaining complaints are brought on behalf of either Advocates for American Disabled Individuals LLC or Advocates for Individuals with Disabilities Foundation Incorporated.

1    Plaintiffs instead filed a motion for an extension of time to respond, which the

2    Court granted.  Doc. 20.  Plaintiffs filed their response to the Order on September 12,

3    2016.  Doc. 24.  Plaintiffs addressed AID's associational standing, said nothing about

4    Ritzenthaler's standing, and stated that they intend to file an amended complaint or

5    supplemental pleading.  *Id.*  No motion to amend or supplement has been filed.  *Id.*

6    **II.    Article III Standing.**

7    "[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming

8    discrimination must satisfy the case or controversy requirement of Article III by

9    demonstrating his standing to sue at each stage of the litigation."  *Chapman v. Pier 1*

10   *Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  "Federal courts are

11   required *sua sponte* to examine jurisdictional issues such as standing."  *Id.* at 954

12   (quotation marks, citation, and brackets omitted).  After reviewing Plaintiffs' response to

13   the Order, the Court finds that neither AID nor Ritzenthaler have Article III standing to

14   pursue this suit.

15   **A.    AID Does Not Have Article III Standing.**

16   An organization can bring suit on its own behalf or on behalf of its members.  *See*

17   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 169 ( 2000).

18   In its response to the Order, AID asserts that it has standing to sue on behalf of its

19   members; it claims no independent injury as an organization.  Doc. 24 at 1.

20   The Supreme Court has established a three-part test for the standing of an

21   organization to sue on behalf of its members:

22   
23   An association has standing to bring suit on behalf of its members when its
     members would have standing to sue in their own right, the interests at
     stake are germane to the organization's purpose, and neither the claim
24   asserted nor the relief requested requires individual members' participation
     in the lawsuit.
25

26   *Friends of the Earth,* 528 U.S. at 169.[2]

27   _____

28   [2] Because the Court finds that AID has not identified any member with standing to
     sue in his or her own right, it need not consider the other prongs of this test.

1    　To show that at least one of its members has standing to sue in his or her own

2    right, AID must show that the member has suffered an injury-in-fact.  Furthermore, "an

3    organization suing as representative [must] include at least one member with standing to

4    present, in his or her own right, the claim (or the type of claim) pleaded by the

5    association."  *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,*

6    517 U.S. 544, 555 (1996).

7    　The text of Plaintiffs' response does not identify any members of AID, but a

8    caption to one of its sections suggests that David Ritzenthaler is a member.  Doc. 24 at 2.

9    AID does nothing, however, to show that Ritzenthaler has suffered an injury-in-fact.

10   Plaintiffs instead make a simple, conclusory assertion:

11   　　The lack of signage [at Defendant's property] is a deterrent to disabled
12   　　individuals' (including members of AID who are identified and some not
　　　　yet identified) use of the Lot, because it renders it more difficult for them to
13   　　identify which, if any parking spots are van accessible.  Members of AID
14   　　would like to, and intends to use the Lot, but the lack of van-accessible
　　　　signage that is at least 60 inches above the ground is a deterrent and barrier
15   　　to access.

16   *Id*.  AID also asserts that it has unidentified members who are disabled or have disabled

17   children, and who reside in the greater Phoenix area.  *Id.* at 2.  These members allegedly

18   "travel on the Valley's streets" and "have lawful disability-parking plates or placards for

19   their vehicles."  *Id.*  AID provides no actual examples of such persons being deterred

20   from using Defendant's public accommodation because it lacks a sign that is 60 inches

21   above the ground.  AID offers only conclusory assertions.

22   　AID has not shown that it has organizational standing to pursue this action.  The

23   discussion below shows that Ritzenthaler does not have standing, and AID has not

24   identified any other members who "would have standing to sue in their own right."

25   *Friends of the Earth*, 528 U.S. at 169; *see also Payne v. Chapel Hill N. Properties, LLC*,

26   947 F. Supp. 2d 567, 577 (M.D.N.C. 2013) (granting motion to dismiss for lack of

27   standing when organization identified only one member in its complaint and was unable

28   to show that she had standing to sue in her own right).  AID may be an organization

1    interested in enforcement of disability discrimination laws, but an undifferentiated

2    interest in ensuring compliance with the law does not suffice.  *Lujan*, 504 U.S. at 575

3    (citing *United States v. Richardson*, 418 U.S. 166, 176-77 (1974)); *see also Simon v. E.*

4    *Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976) ("an organization's abstract

5    concern with a subject that could be affected by an adjudication does not substitute for

6    the concrete injury required by" Article III).

7                    **B.      David Ritzenthaler Does Not Have Article III Standing.**

8           An individual plaintiff must satisfy three elements to establish Article III standing:

9    (1) an injury-in-fact, (2) causation between the injury and the allegedly wrongful conduct,

10   and (3) that the injury is likely to be redressed by a favorable decision from the court.

11   *Lujan*, 504 U.S. at 560.  Plaintiffs have the burden of proving all three elements.  *Id.* at

12   561.  Plaintiffs correctly note that "[t]he Supreme Court has instructed us to take a broad

13   view of constitutional standing in civil rights cases, especially where, as under the ADA,

14   private enforcement suits are the primary method of obtaining compliance with the Act,"

15   *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008), but this does not relieve a

16   plaintiff of his burden to show an injury-in-fact, *see Chapman,* 631 F.3d at 946.

17                    **1.      Injury-In-Fact.**

18          An injury-in-fact is "(a) concrete and particularized, and (b) actual or imminent,

19   not conjectural or hypothetical."  *Lujan,* 504 U.S. at 560 (internal quotations and citations

20   omitted).   This includes a "requirement that a party seeking review must allege facts

21   showing that he is himself adversely affected."  *Sierra Club v. Morton*, 405 U.S. 727, 740

22   (1972).  Additionally, to establish standing to seek injunctive relief, a party must show

23   that he "is likely to suffer future injury" absent the requested injunction.  *City of Los*

24   *Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

25          Ritzenthaler alleges that on a particular date he "*became aware* that there were"

26   ADA violations at Defendant's business.  Doc. 1 at 13 (emphasis added).  The complaint

27   alleges that Ritzenthaler has "actual knowledge of at least one barrier related to [his]

28   disability[.]"  *Id.* at 14.  But the complaint does not allege how Ritzenthaler learned of the

1    alleged barrier, whether he has ever visited Defendant's business, whether he lives or

2    travels anywhere near the business, or even whether he patronizes businesses of the same

3    type.   The complaint does not even identify the nature of Defendant's business.   *Id.*

4    Instead, consistent with the boilerplate nature of the complaint and apparently to cover

5    the waterfront, the complaint alleges that Plaintiff may visit the site "for business,

6    pleasure, medical treatment or other commercial purposes."   *Id.* at 14.   A photograph of

7    Defendant's property attached to Plaintiffs' response suggests that the building houses an

8    endocrinology medical practice.   Doc. 24 at 6.   The complaint does not allege that

9    Ritzenthaler uses or needs an endocrinologist.[3]

10   Thus, this case squarely presents the question of whether Ritzenthaler must have

11   personally visited Defendant's property to have standing to assert ADA violations.   This

12   question was raised in the Court's Order (Doc. 13 at 4), but Plaintiffs chose not to address

13   it.   The Court can only conclude that Ritzenthaler has not visited Defendant's business

14   and seeks to establish standing merely on the basis of his second-hand knowledge of

15   barriers.   This is consistent with other cases attorney Peter Strojnik has litigated.   *See*,

16   *e.g.*, *Brooke v. Peterson*, --- F.Supp.3d ---, 2016 WL 2851440, at *2 (C.D. Cal. May 13,

17   2016) ("Plaintiff never alleges or otherwise asserts that she has visited the hotels.");

18   *Brooke v. Kalthia Grp. Hotels*, No. 15CV1873-GPC(KSC), 2015 WL 7302736, at *5

19   (S.D. Cal. Nov. 18, 2015) (Plaintiff called a hotel and learned it did not have a pool lift,

20   but never visited the site).   Although Plaintiffs' complete failure to address this issue has

21   provided the Court with no assistance, the Court has reviewed relevant case law and

22   concludes that Ritzenthaler cannot establish injury-in-fact.

23   In *Chapman*, the Ninth Circuit described the circumstances under which an ADA

24   plaintiff experiences injury-in-fact:

25

26   _____

     [3]   The complaint alleges that Ritzenthaler's "agents" verified that Defendant's
27   property was not ADA compliant.   *Id.* at 14.   It does not identify these agents, but the
     Court assumes they are ADA experts like those used by attorney Peter Strojnik in other
28   ADA cases.   *See  Brooke v. Peterson*, --- F.Supp.3d ---, 2016 WL 2851440, at *2 (C.D.
     Cal. May 13, 2016); *Brooke v. Kalthia Grp. Hotels*, No. 15CV1873-GPC(KSC), 2015
     WL 7302736, at *5 (S.D. Cal. Nov. 18, 2015).

1
2
3
4

Under the ADA, when a disabled person *encounters an accessibility barrier* violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way.  Rather, the barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility.  42 U.S.C. § 12182(a).

5

* * *

6
7
8
9
10
11
12
13

Of course, a "barrier" will only amount to such interference *if it affects the plaintiff's full and equal enjoyment of the facility* on account of his particular disability.   Because the ADAAG establishes the technical standards required for "full and equal enjoyment," if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA.  That discrimination satisfies the "injury-in-fact" element of *Lujan*.  As we have held, once a disabled plaintiff *has encountered a barrier* violating the ADA, "that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related to that person's particular disability."

14

*Chapman*, 631 F.3d at 947 (emphasis added, footnote and some citations omitted).

15
16
17
18
19

Under this language, an ADA plaintiff must actually encounter a barrier to experience injury-in-fact.  Such a requirement comports with the Article III demand that a plaintiff's injury be "concrete and particularized," "actual or imminent," and not "hypothetical," and that it "affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 561 & n. 1.

20
21
22
23
24
25
26
27
28

Although Plaintiffs' counsel declined to address the issue in this case, they have argued in other cases, and appear to assert in the complaint, that mere knowledge of a barrier is enough to satisfy the injury-in-fact requirement, even if the plaintiff has never personally encountered the barrier.  *See Brooke v. Kalthia Grp. Hotels*, 2015 WL 7302736, at *4-5.  The Court does not agree.  Under this theory, a disabled person in Arizona could learn of an architectural barrier at a facility in Tennessee which the person has never visited and never plans to visit, and yet would suffer an injury-in-fact by the mere knowledge.  Such an injury, if it could be called an injury at all, would not be concrete, particularized, actual, or imminent.  And even if the person firmly resolved that

1    he would never visit the Tennessee facility because of the barrier, any future injury from

2    the barrier would be purely hypothetical.

3    In other cases, Plaintiffs' counsel have looked to language from several Ninth

4    Circuit cases to argue that mere knowledge of a barrier is sufficient for ADA standing.  It

5    is true that these cases contain language stating that a plaintiff has suffered injury when

6    he has "personally encountered *or had personal knowledge*" of discriminatory barriers.

7    *Doran*, 524 F.3d at 1041 (emphasis added).  But the context of these statements makes

8    clear that they do not confer standing on Ritzenthaler in this case.

9    For example, in *Doran v. 7-Eleven, Inc.*, the plaintiff actually visited a particular

10   7-Eleven store between 10 and 20 times, encountered discriminatory barriers, and was

11   deterred from returning until the barriers were removed.  *Id.* at 1037.  The Ninth Circuit

12   held that "Doran has suffered an injury that is concrete and particularized because he

13   alleged in his amended complaint that he personally suffered discrimination as a result of

14   the barriers in place during his visits to 7–Eleven and that those barriers have deterred

15   him on at least four occasions from patronizing the store." *Id.* at 1040.  The Ninth Circuit

16   explained that this actual injury "gets him inside the courthouse door and brings his

17   Article III case forward for our judicial evaluation." *Id.* 1041-42.  The Ninth Circuit then

18   had to decide "the scope of barriers that Doran may challenge." *Id.* at 1041.   Was he

19   limited to barriers he personally had encountered, or could he also challenge barriers he

20   learned about during discovery?  The court held that the additional barriers could be

21   included in the lawsuit:

22   it is entirely plausible that the reason he did not know the full scope of 7–
     Eleven's ADA violations when he filed his complaint is that the violations
23   he did know about deterred him from conducting further first-hand
     investigation of the store's accessibility. . . . [I]t would be ironic if not
24   perverse to charge that the natural consequence of this deterrence, the
     inability to personally discover additional facts about the defendant's
25   violations, would defeat that plaintiff's standing to challenge other
     violations at the same location that subsequently come to light.
26
27

28   *Id.* at 1042.

1      This holding makes practical sense.  If a plaintiff has suffered an injury-in-fact by

2  personally encountering a discriminatory barrier, he has standing to bring an ADA case in

3  federal court.  Once the case has been filed, it should address all barriers to the plaintiff's

4  access that the defendant has erected.  As the Ninth Circuit explained in *Chapman*, "an

5  ADA plaintiff who has standing to sue because he has been discriminated against in one

6  aspect of a public accommodation may, in one lawsuit, obtain an injunction to prevent

7  impending discrimination throughout the accommodation."  631 F.3d at 952.  *Chapman*

8  emphasized that this holding "in no way relieves plaintiffs from the constitutionally

9  imposed burden of demonstrating an injury-in-fact and a sufficient likelihood of repeated

10  harm."  *Id*. at 953.

11      The Court cannot conclude from cases like *Doran* or *Chapman* that a plaintiff

12  suffers an injury-in-fact when he has never visited the defendant's property and merely

13  learns of a barrier through another source.  Ritzenthaler's unexplained knowledge of the

14  alleged barriers in this case has injured him no more than the Arizonan who learns of an

15  architectural barrier in Tennessee, as discussed above.

16      Other Ninth Circuit cases are consistent with this conclusion.  In *Pickern v.*

17  *Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002), the court found that the

18  plaintiff had standing when he was deterred from returning to a Holiday Foods store in

19  Paradise, California, which he had previously visited on several occasions.  According to

20  the court, "under the ADA, once a plaintiff has actually become aware of discriminatory

21  conditions existing at a public accommodation, and is thereby deterred from visiting or

22  patronizing that accommodation, the plaintiff has suffered an injury."  *Id.* at 1136-37.

23  The plaintiff need not make the "futile gesture" of returning to the store again.  *Id.*  The

24  court did not make clear what was necessary to show actual awareness, but it is clear that

25  the plaintiff's awareness in *Pickern* came from personally encountering the barriers:

26      [Plaintiff] has visited Holiday's Paradise store in the past and states that he
       has actual knowledge of the barriers to access at that store.  [Plaintiff] also
27      states that he prefers to shop at Holiday markets and that he would shop at
       the Paradise market if it were accessible.  This is sufficient to establish
28

- 9 -

1   actual or imminent injury for purposes of standing.

2   *Id.* at 1138.  As another court has observed, *Pickern* "did not hold that an ADA plaintiff

3   has standing if she is deterred from visiting a noncompliant place of accommodation even

4   if she has never visited the accommodation."  *Brooke v. Peterson*, 2016 WL 2851440, at

5   *4.

6   In *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1034 (9th Cir.

7   2008), the Ninth Circuit found that a plaintiff had standing when she visited a Santa

8   Barbara hotel and encountered multiple barriers to access.  According to the plaintiff, she

9   had plans to return to Santa Barbara and desired to stay at the hotel.  *Id.* at 1037.  The

10   court found that the plaintiff need not "engage in the 'futile gesture' of visiting or

11   returning to an inaccessible place of public accommodation in order to satisfy the

12   standing requirement."  *Id.*   While the court referred to "visiting or returning," it is

13   noteworthy that the facts of the case concerned an individual who had personally visited

14   the public accommodation and encountered discriminatory barriers.  The only question

15   before the Ninth Circuit was whether the plaintiff had an intent to return sufficient to

16   make her alleged injury "actual or imminent[.]"  *Id.* at 1036.  Because she did intend to

17   return if the barriers were removed, the court found that she had standing.  *Id.* at 1039.

18   Finally, the Court notes that the Central District of California recently addressed

19   standing in a similar ADA case brought by Mr. Strojnik.  *See Brooke v. Peterson,* 2016

20   WL 2851440.  The plaintiff in that case alleged that Best Western International violated

21   the ADA by not having a lift in its pool and Jacuzzi.  *Id.* at *1.  The plaintiff had never

22   visited the defendant's hotel, but instead alleged that she called the hotel and was told it

23   was not equipped with a lift, which was then verified by her expert.  *Id.*  The court found

24   this insufficient for standing:

25   Binding precedent supports that under any theory of standing, including the
26   deterrent effect doctrine, an ADA plaintiff must have previously visited a
     noncompliant place of accommodation to have an injury-in-fact under
27   Article III.  Without ever visiting the hotels and encountering the barriers,
     Plaintiff's injury is not particularized and concrete.  And without ever
28   visiting the hotels and encountering the barriers, Plaintiff's injury is not

1
2
3
4
5

> actual or imminent.  Whether the case law requires Plaintiff to *encounter* the barriers or if it is enough that Plaintiff have *personal, percipient knowledge* of the barriers doesn't matter here, as Plaintiff has never even visited the hotels.  Accordingly, without a "particular and concrete" and an "actual or imminent" injury, Plaintiff lacks standing under Article III to bring her ADA claims.

6

*Id.* at \*6 (emphasis in original, internal citations and quotations omitted).

7
8
9
10
11
12
13
14
15
16
17
18
19
20

Admittedly, *Pickern* and *D'Lil* do contain broad language that could be read to suggest that injury-in-fact occurs even when a plaintiff has never visited a facility, provided he would actually do so were he not deterred by discriminatory barriers.  That was not the holding of *D'Lil* or *Pickern*, but even if such a broad reading were entertained, it would not help Ritzenthaler.  As noted previously in this order, he provides no facts from which the Court can conclude that he has ever sought, for any reason, to visit Defendant's endocrinology office, or that he intends to do so in the future.  The complaint does allege generally that "[t]he existence of barriers deters Plaintiff and other disabled persons from conducting business or returning to Defendant's Public Accommodation."  Doc. 1 at 14.  It also alleges that "Plaintiff, *or an agent of Plaintiff*, intends to return to Defendant's Public Accommodation to ascertain whether it remains in violation of the AzDA and the ADA."  *Id.* at 15 (emphasis added).  But these bare allegations, unsupported by any facts suggesting that Ritzenthaler himself intends to visit the property, are insufficient to satisfy even a broad reading of *D'Lil* and *Pickern*.

21
22
23
24
25
26
27
28

In determining whether a plaintiff's likelihood of visiting or returning to a facility is sufficient to confer standing, courts have examined factors such as "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant."  *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005) (citation and quotation marks omitted).  These factors were specifically identified in the Court's Order (Doc. 13 at 2-3), but Ritzenthaler did not address them in his response.  Doc. 24.

The Court concludes that Ritzenthaler has failed to show injury-in-fact.  He therefore lacks standing to pursue his claims in federal court.[4]

### 2.     Other Defects in Plaintiffs' Complaint.

The Ninth Circuit has also made clear that an ADA plaintiff must plead facts linking the defendant's discriminatory barriers to the plaintiff's injury.  Merely listing ADA violations at the defendant's property "cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact." *Chapman*, 631 F.3d at 955.  A plaintiff must identify "how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return," or "how any of them deter him from visiting the [defendant's facility] due to his disability." *Id.*

Plaintiffs' complaint does not even identify the specific barriers that allegedly exist at Defendant's premises.  It instead alleges only a list of possibilities:

> insufficient handicapped parking spaces, insufficient designation or signage and or insufficient disbursement of such parking spaces in order to provide the "shortest accessible route from parking to an entrance", specifically but not limited to parking spaces by the designation "van accessible" and or fails to maintain the minimum height of 60 inches (1525 mm) above the finish floor or ground surface measured to the bottom of the sign.

Doc. 1 at 13.  By using the word "or" and the phrase "and or" in this description, the complaint fails to identify which ADA violations allegedly exist at Defendant's property.  The complaint continues: "[w]ithout the presence of adequate handicapped parking spaces, sufficient designation or signage and or sufficient disbursement of such parking spaces, Plaintiff's disability prevents Plaintiff and other disabled persons from equal enjoyment of the Defendant's Public Accommodation." *Id.* at 14.  Again, the disjunctive nature of this list fails to specify barriers that have injured Ritzenthaler.  As in *Chapman*,

---

[4] The Court is aware of other cases within this district that have reached a different conclusion.  *See*, *e.g.*, *Brooke v. Airport Hotel, LLC*, No. 2:15-CV-1149-HRH, 2015 WL 5444286 (D. Ariz. Sept. 16, 2015).  The Court respectfully disagrees with these decisions for the reasons set forth above.

1   the complaint "leaves the federal court to guess which, if any, of the alleged violations

2   deprived him of the same full and equal access that a person who is not wheelchair bound

3   would enjoy[.]"  631 F.3d at 955.  Faced with this same defect in *Chapman*, the Ninth

4   Circuit remanded with instructions to dismiss the complaint for lack of standing.  The

5   Court likewise concludes that Plaintiffs lack Article III standing.

6                 **3.      The Importance of Standing in These Cases.**

7          Article III's injury-in-fact requirement is particularly relevant in this and related

8   cases.  As noted, Plaintiffs' counsel have more than 160 cases pending in this Court.

9   They reportedly have filed more than a thousand similar cases in state court.[5]  These

10  filings all appear to be based on the plaintiff's awareness of a barrier – an awareness

11  apparently acquired when persons associated with Plaintiffs' counsel find non-compliant

12  locations.  The Court cannot conclude that this kind of mass-filing based on an agent's

13  search for non-compliant properties constitutes the individual, particularized injury

14  necessary for Article III standing.  As already noted, a mere interest in ensuring

15  compliance with anti-discrimination laws is not sufficient.  *Lujan*, 504 U.S. at 575.

16  **III.    Leave to Amend or Supplement the Pleadings.**

17         Plaintiffs' response states that they intend to amend or supplement their complaint,

18  but they have not moved to amend despite the Court's clear notice that it plans to rule on

19  their standing. Doc. 24 at 3-6.  Plaintiffs also suggest that they may remove their federal

20  ADA claims by amendment and then seek remand to state court.  Indeed, one section of

21  their response is titled "Remand is Also Appropriate."  *Id*. at 5.  Plaintiffs discuss a Ninth

22  Circuit case in which the plaintiff eliminated federal claims and obtained a remand, and

23  say this is "precisely what the Plaintiff and its counsel intend to do here."  *Id.* at 6.

24         If Plaintiffs did seek to amend their complaint in response to the Order, the Court

25  would deny the request.  A district court may deny leave to amend when it finds "undue

26  delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

27

28         [5] *See* http://kjzz.org/content/347212/group-targets-phoenix-area-businesses-flurry-ada-lawsuits (last visited Sept. 27, 2016).

1
2
3

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

4
5
6
7
8
9

As already noted, Plaintiffs' counsel has more than 160 ADA cases pending in this Court and hundreds more in state court.  Mr. Strojnik has brought similar complaints in other districts, and they too have lacked standing.  *See Brooke v. Peterson,* 2016 WL 2851440; *Brooke v. Kalthia Grp. Hotels*, 2015 WL 7302736.   Indeed, Mr. Strojnik brought more than 90 cases in the Central District of California.  *Brooke v. Peterson*, 2016 WL 2851440, at \*1.

10
11
12
13
14
15
16

The complaints in this Court appear to be boilerplate.  *Compare* Doc. 1 *with Advocates for Individuals with Disabilities, LLC v. Home Depot USA Inc.*, Case 2:16-cv-01002-ROS, Doc. 1.  The complaints make little effort to establish any real injury.  *Id.* And Plaintiffs' counsel apparently follow their boilerplate complaints with a demand that defendants each pay $7,500 to settle.  *See Ritzenthaler v. Stratis-Mesa Properties, LLC*, 16-CV-01718-ROS, Doc. 15-1 at 3-6.  These practices suggest an abuse of the judicial system.

17
18
19
20
21
22
23

Plaintiffs' complaint in this case offers only conclusory statements about Plaintiffs' alleged injuries, with no factual support.  These deficiencies were explicitly noted in the Court's Order.  Doc. 13.  And yet, despite four full weeks to prepare a response, Plaintiffs did not even discuss Ritzenthaler's standing and alleged no injury to AID.  These are matters Plaintiffs' counsel should have considered carefully before filing these cases, and certainly before making settlement demands.  *See* Fed. R. Civ. P. 11(b). There is no excuse for their inability to address them in response to the Order.[6]

24
25
26
27

But this is not the only indication that Plaintiffs' counsel are taking their judicial responsibilities lightly.  In three other cases pending before the undersigned judge, Plaintiffs' counsel have failed to file timely Rule 26(f) reports despite a court order

28

[6] Apparently, Mr. Strojnik's failure to provide helpful input on ADA standing issues is not confined to this case. *See  Brooke v. Peterson*, 2016 WL 2851440, at \*2-3.

- 14 -

1   directing them to initiate the Rule 26(f) conference and file the report by a specific

2   deadline.   *See* CV-16-1025, CV-16-2375, CV-16-2595.   The Court's staff has had to

3   prompt Plaintiffs' counsel to comply with this most basic of obligations.   Two days ago,

4   the Court's staff was contacted four times in one day by staff members in Plaintiffs'

5   counsel's office to address various points of confusion in pending cases.   And this is only

6   with respect to cases pending before this judge.   The Court does not know how Plaintiffs'

7   counsel believe in good faith that they can discharge their duties to courts and their

8   clients in hundreds of pending cases.

9        Given this conduct and Plaintiffs' delay in providing any colorable response to the

10  Court's standing concerns, the Court would deny Plaintiffs leave to amend on the basis of

11  undue delay, bad faith, and dilatory motive.   *Foman*, 371 U.S. at 182.

12  **IV.    Remand.**

13       The removal statute provides that "[i]f at any time before final judgment it appears

14  that the district court lacks subject matter jurisdiction [over a case removed from state

15  court], the case shall be remanded."   28 U.S.C.A. § 1447(c).   This applies to cases that

16  lack standing.   *Polo v. Innoventions Int'l, LLC*, No. 14-55916, 2016 WL 4394586, at *3

17  (9th Cir. Aug. 18, 2016) ("a removed case in which the plaintiff lacks Article III standing

18  must be remanded to state court under § 1447(c)").

19       The Ninth Circuit has suggested that remand may not be necessary where it would

20  be futile, that is, where the plaintiff clearly would lack standing in state court as well.

21  *Bell v. City of Kellogg,* 922 F.2d 1418, 1424 (9th Cir. 1991).   But the Supreme Court and

22  Ninth Circuit have cast doubt on this possible course of action.   The Supreme Court has

23  noted that the literal words of § 1447(c), on their face, give no discretion to dismiss rather

24  than remand an action.   *Int'l Primate Prot. League v. Administrators of Tulane Educ.*

25  *Fund*, 500 U.S. 72, 89 (1991) (internal quotation omitted).   The Ninth Circuit has also

26  noted that "the *Bell* rule has been questioned, and may no longer be good law."   *Polo*,

27  2016 WL 4394586, at *4; *see also Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d

28  1220, 1226 (10th Cir. 2012).

- 15 -

1    Even if the Court retains the ability to dismiss rather than remand, it would apply

2  only where the court is "absolutely certain" that remand would be futile.  *Bell,* 922 F.2d

3  at 1425; *Maine*, 876 F.2d at 1054.  That is not the case here.  The constraints of Article

4  III "do not apply to state courts, and accordingly the state courts are not bound by the

5  limitations of a case or controversy or other federal rules of justiciability even when they

6  address issues of federal law."  *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989).  A

7  plaintiff who fails to establish Article III standing to bring suit in federal court is not

8  necessarily barred from pursuing the same suit in state court.

9    Unlike more rigid Article III requirements, Arizona law affords trial courts

10  discretion when addressing standing:

11    We have previously determined that the question of standing in Arizona is
   not a constitutional mandate since we have no counterpart to the "case or
12    controversy" requirement of the federal constitution.  In addressing the
   question of standing, therefore, we are confronted only with questions of
13    prudential or judicial restraint.  We impose that restraint to insure that our
   courts do not issue mere advisory opinions, that the case is not moot and
14    that the issues will be fully developed by true adversaries.  Our court of
15    appeals has explained that these considerations require at a minimum that
   each party possess an interest in the outcome.  Thus, the question of
16    standing in Arizona cases such as this need not be determined by rigid
17    adherence to the three-prong [federal test], although those factors may be
18    considered.

19

20  *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 712 P.2d 914,

21  919 (Ariz. 1985) (internal citations omitted); *see also Bennett v. Brownlow*, 119 P.3d 460,

22  462 (Ariz. 2005) (standing can be waived by Arizona courts in rare circumstances).

23    Given the more flexible standing requirements of Arizona law, the Court cannot

24  be "absolutely certain" that Plaintiffs lack standing in state court.  *Bell,* 922 F.2d at 1425.

25  As a result, the Court will remand rather than dismiss this case.  In remanding, the Court

26  will not dismiss the federal ADA claims because state courts have concurrent jurisdiction

27  over those claims and the state courts may decide Plaintiffs have sufficient standing to

28  pursue them.  *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("we

1   conclude that Congress did not divest the state courts of their concurrent authority to

2   adjudicate [civil actions brought under Title VII of the Civil Rights Act of 1964]");

3   *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997) ("State courts have

4   concurrent jurisdiction over ADA claims"); *Jones v. Illinois Cent. R. Co.*, 859 F. Supp.

5   1144, 1145 (N.D. Ill. 1994) (interpreting *Yellow Freight*, "it necessarily follows that the

6   state courts have concurrent jurisdiction over ADA claims as well"); *Krouse v. Am.*

7   *Sterilizer Co.*, 872 F. Supp. 203, 205 (W.D. Pa. 1994) ("it appears to be solidly

8   established that state courts have concurrent jurisdiction over ADA cases").

9          **IT IS ORDERED** that this action is remanded to Maricopa County Superior

10  Court.

11         Dated this 28th day of September, 2016.

12

13

14

15  _____
    David G. Campbell
16  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -